394 So.2d 147 (1981)
The SCHOOL BOARD OF BROWARD COUNTY, Florida and Pacific Indemnity Insurance Company, a Foreign Corporation, Appellants,
v.
Virginia L. SURETTE, As Administratrix of the Estate of Diane Surette, Deceased, Joan M. Galiardo and Liberty Mutual Insurance Company, a Foreign Corporation, Appellees.
No. 78-191.
District Court of Appeal of Florida, Fourth District.
January 28, 1981.
Rehearing Denied March 16, 1981.
*149 William S. Gardella of Walton, Lantaff, Schroeder & Carson, Fort Lauderdale, and James E. Tribble of Blackwell, Walker, Gray, Powers, Flick & Hoehl, Miami, for appellants School Board of Broward County and Pacific Indemnity Ins. Co.
Frank E. Maloney, Jr., and Paul R. Regensdorf of Fleming, O'Bryan & Fleming, Fort Lauderdale, for appellees/cross appellants, Joan M. Galiardo and Liberty Mutual Ins. Co.
Edward A. Perse of Horton, Perse & Ginsberg, Miami, and Robert M. Sussman, Miami, for appellee, Virginia L. Surette.
MOORE, Judge.
The tragedy in this case has spawned a number of cases in the trial court as well as a number of appeals and petitions in the appellate system. The appellees' decedent, Diane Surette, age thirteen, was struck by an automobile owned by Arthur Galiardo, Jr. and driven by Joan Galiardo on September 15, 1971 while she was waiting for a school bus. She passed away twenty-nine days later.
Two suits were commenced as a result of this unfortunate accident. In Case No. 1, Virginia and Gilbert Surette, as parents of the decedent, sued the School Board of Broward County, its insurer, Pacific Indemnity Insurance Company, Joan Galiardo, her insurer, Liberty Mutual Insurance Company, and others who are not parties to this appeal. The parents sought damages pursuant to Section 768.03, Florida Statutes (1971) for the wrongful death of their minor child. Although this case is not before us, we will necessarily refer to it as Case No. 1 in this opinion.
In Case No. 2, Virginia Surette, as administratrix of the Estate of Diane Surette, sued the School Board, Pacific Indemnity, Arthur and Joan Galiardo, Liberty Mutual and others who are not parties to this appeal. In a single complaint damages were sought for the wrongful death of Diane pursuant to Section 768.02, Florida Statutes (1971) and for survivorship damages pursuant to Section 46.021, Florida Statutes (1971). A jury returned a verdict in favor of the plaintiff against the School Board, Pacific Indemnity, Joan Galiardo and Liberty Mutual. The jury found the School Board 50% negligent, Joan Galiardo 15% negligent, and the decedent 35% negligent. Wrongful death damages were found to be $25,000 and the survival action damages were found to be $121,000. After an appropriate final judgment was entered, the School Board and Pacific Indemnity appealed. We affirm the judgment against the School Board and Pacific Indemnity. Galiardo and Liberty Mutual cross-appealed and we reverse the judgment against Galiardo and Liberty Mutual.
The School Board and Pacific Indemnity argue four grounds for reversal of the final judgment. They contend that the Pacific Indemnity Insurance Policy was a general comprehensive liability policy which specifically excluded liability for bodily injury arising out of the ownership, maintenance, operation, use and loading and unloading of school busses. In this regard, they contend the trial court erred in not severing Pacific Indemnity as a defendant pursuant to Fla. R.Civ.P. 1.270(b) because there was a genuine and justiciable issue concerning insurance coverage. Their second ground for reversal is the alleged error in denying their motion to sever the insurance company and suppress any mention of insurance coverage to the jury pursuant to Section 234.03(4), Florida Statutes (1973). The appellants' next contention is that the trial court erred in admitting the expert testimony of a safety engineer in proof of the Board's negligence in the selection and maintenance of the school bus stop. Their final contention is that the evidence was insufficient, as a matter of law, to establish a breach of any duty owed by the School Board to the decedent. Rather, they contend the evidence established, as a matter of law, that the proximate cause of the accidental death *150 was the intervening negligence of Galiardo and the decedent.
On the cross-appeal, Galiardo and Liberty Mutual contend that the trial court erred in denying their motion to dismiss the survival action because the statute of limitations had run prior to the commencement of the action.

I.
The School Board had a policy of insurance with Continental Casualty Insurance Company which provided coverage for injuries arising from the ownership, maintenance, operation, or use of school busses and other vehicles while transporting pupils to and from school. This policy was designed to provide coverage concomitant with the School Board's waiver of sovereign immunity pursuant to Section 234.03(4), Florida Statutes (1971). The appellants contend that if the School Board is liable, its liability is covered under the Continental policy as opposed to the Pacific Indemnity policy. This contention is erroneous. As we opined in Surette v. Galiardo, 323 So.2d 53 (Fla. 4th DCA 1975) in discussing the Pacific policy:
The record reflects that the school board purchased a comprehensive general liability insurance policy from Pacific Indemnity which provided for bodily injury and property damage liability coverage for an "occurrence" which was defined to embrace "an accident, including injurious exposure to conditions, which results, during the policy period, in bodily injury or property damage neither expected nor intended from the standpoint of the insured...."
The policy in question specifically excluded bodily injury or property damage liability arising out of the ownership, maintenance, operation or use of any automobile owned, leased or operated by the school board. Clearly, therefore, as the trial court correctly observed, the policy in question did not cover an accident resulting from an automobile (or bus) owned, leased or operated by the school board. However, the circumstances in the instant case do not involve the ownership, maintenance, operation, use, loading or unloading of a school bus. The plaintiff's minor child was allegedly struck and killed by an automobile driven by one Joan Galiardo who had no relation to the school board or any of its activities. The presence of the school board and its insurer in the action below was not occasioned by the ownership, maintenance, operation, use, loading or unloading of a school bus, but, rather, by the school board's alleged negligence in its selection, designation, location and maintenance of school bus stop sites. Id. at 55-56.
Thus, although we decline to expressly hold that the Pacific policy provided coverage for the accident involved here, we certainly intimated that the language of that policy was sufficiently broad to encompass this accident. Since we are now asked to determine coverage, we hold that the Pacific Indemnity policy issued pursuant to the Board's waiver of immunity under Section 455.06, Florida Statutes (1971), provided coverage for the alleged injuries. We therefore find no merit in the appellants' arguments that severance should have been granted pursuant to Fla.R.Civ.P. 1.270(b). Severance under the rule is a discretionary matter and the decision of the trial court will not be disturbed absent a clear showing of an abuse of discretion. That showing is conspicuously absent in this case.

II.
Our determination of appellants' next contention necessitates a brief summary of the parallel courses which these cases have taken through the courts.
In Case No. 1, Pacific Indemnity moved for severance pursuant to Section 455.06(2), Florida Statutes (1971) which provides for the waiver of governmental immunity of political subdivisions of the State to the extent of their insurance coverage, and prohibits the suggestion of such coverage in any trial. The trial court held Section 455.06(2) unconstitutional and Pacific Indemnity sought common law certiorari review in this Court. We transferred the cause to the Florida Supreme Court. School Board of *151 Broward County v. Surette, 277 So.2d 604 (Fla. 4th DCA 1973). The Supreme Court affirmed the trial court holding Section 455.06(2) unconstitutional to the extent that it prohibited the suggestion of insurance coverage. School Board of Broward County v. Surette, 281 So.2d 481 (Fla. 1973).
Trial then commenced in Case No. 2. A direct verdict was entered in favor of the School Board and Pacific Indemnity; the plaintiff thereupon voluntarily dismissed her claim against the Galiardos and Liberty Mutual. The final judgment which was entered pursuant to the directed verdict was reversed by this Court and the cause was remanded for a new trial. Surette v. Galiardo, 323 So.2d 53 (Fla. 4th DCA 1975), cert. denied, 339 So.2d 194 (Fla. 1976).
In Case No. 1, the School Board and Pacific filed a renewed motion to sever the insurance company and to suppress the mention of insurance, notwithstanding the Supreme Court's prior ruling. They contended that Carter v. Sparkman, 335 So.2d 802 (Fla. 1976) impliedly overruled the Supreme Court's prior holding in School Board v. Surette, 281 So.2d 481 (Fla. 1973) and that Carter should control the disposition of their motion. After the trial court held that the principle of law announced in School Board v. Surette, 281 So.2d 481 (Fla. 1973) was the established and controlling law of the case, a direct appeal was taken to the Supreme Court. The trial court was affirmed, the Supreme Court stating:
This marks the third appearance of this cause in this Court. School Board of Broward County v. Surette, 281 So.2d 481 (Fla. 1973); School Board of Broward County v. Surette, 339 So.2d 194 (Fla. 1976). The occasion for its most recent visit stems from an order entered by the Circuit Court of the Seventeenth Judicial Circuit for Broward County, Florida, ruling upon a motion by the appellants to suppress and to sever. By their motion appellants urged that the appellant insurance carrier named in the third amended complaint be severed from the trial "and/or" any mention of insurance to the jury be suppressed. Appellants contended that such result is compelled by the provisos contained in Sections 234.03(4) and 455.06(2), Florida Statutes (1975)... .
.....
Although jurisdiction vests in this Court by virtue of the trial court's ruling upon the constitutionality of the indicated sections of the Florida Statutes, we do not deem it necessary or appropriate to reach the constitutional issue presented. This is so because the trial court was eminently correct in determining that our decision in School Board of Broward County v. Surette, 281 So.2d 481 (Fla. 1973), established the law of the case in this cause which is unaffected by our decision in Carter v. Sparkman, supra. See Airvac, Inc. v. Ranger Insurance Co., 330 So.2d 467 (Fla. 1976); Harwell v. Sheffield, 112 So.2d 377 (Fla. 1959); 2 Fla.Jur. Appeals § 398 (1963).

School Board of Broward County v. Surette, 348 So.2d 301 (Fla. 1977).[1]
Appellants now argue that the Supreme Court's decision reported at 281 So.2d 481 does not operate as the "law of the case" in Case No. 2 (the present action). It is therefore argued that the trial court should have granted appellants' motion to sever and suppress mention of insurance coverage pursuant to Section 234.03(4), Florida Statutes (1973) which states:
(4) WAIVER OF IMMUNITY.  In consideration of the premium at which each policy shall be written it shall be a part of the policy contract between the company and the named insured that the company shall not be entitled to the benefit of the defense of governmental immunity for the insured by reason of exercising a governmental function on any suit brought against the insured. Immunity *152 of the school board against liability damages is waived to the extent of liability insurance carried by the school board. Provided, however, no attempt shall be made in the trial of any action against a school board to suggest the existence of any insurance which covers in whole or in part any judgment or award which may be rendered in favor of the plaintiff, and if a verdict rendered by the jury exceeds the limit of the applicable insurance, the court shall reduce the amount of said judgment or award to a sum equal to the applicable limit set forth in the policy. (Emphasis supplied).
Thus, the language of Section 234.03(4) prohibiting the suggestion of insurance coverage at trial is identical to the language of Section 455.06(2). Although the Supreme Court in School Board v. Surette, 281 So.2d 481 (Fla. 1973) was concerned only with the constitutionality of Section 455.06(2), we are constrained by the language employed by the court in School Board v. Surette, 348 So.2d 301 (Fla. 1977) to hold that the former decision is also the "law of the case" in the present case. At 348 So.2d 301, 302, the Supreme Court stated that "This marks the third appearance of this cause in this Court." The Court then cited the previous two appearances as School Board v. Surette, 281 So.2d 481 (Fla. 1973) (Case No. 1) and School Board v. Surette, 339 So.2d 194 (Fla. 1976) (Case No. 2). Thus, the Supreme Court has considered both Case No. 1 and Case No. 2 to be parts of the same cause and has held that the decision at 281 So.2d 481 is the "law of the case" as to that cause. See, School Board v. Surette, 348 So.2d 301 (Fla. 1977) at 303. Therefore, even though the suggestion of insurance coverage may be prohibited under either Section 234.03(4) or Section 455.06(2), the law of this case is otherwise pursuant to School Board v. Surette, 281 So.2d 481 (Fla. 1973).
The trial court was therefore correct in denying appellants' motion to sever and suppress the mention of insurance coverage.

III.
Appellants' third point of error concerns the admission of testimony of a safety engineer to establish the dangerous condition of the school bus stop. An expert's testimony is admissible if the subject about which he testifies is beyond the common understanding of the average layman and the witness has such knowledge as will assist the jury in arriving at the truth. Buchman v. Seaboard Coast Line R. Co., 381 So.2d 229 (Fla. 1980). Considering these criteria, we find the trial court correctly admitted the testimony of the safety engineer in this case. Moreover, we are persuaded that even if it was error to allow the introduction of expert testimony, such error was harmless. Improper expert testimony may be considered harmless error where there is other sufficient evidence to justify the jury in reaching the conclusion supported by the opinion of the expert. Hughes v. Canal Insurance Company, 308 So.2d 552 (Fla. 3rd DCA 1975); Seaboard Coast Line R. Co. v. Hill, 250 So.2d 311 (Fla. 4th DCA 1971); Brevard County v. Apel, 246 So.2d 134 (Fla. 4th DCA 1971) and Delta Rent-A-Car, Inc. v. Rihl, 218 So.2d 469 (Fla. 4th DCA 1969).

IV.
The appellants' final point on appeal is that the trial court erred in denying their motion for a directed verdict because:
(1) The evidence was insufficient, as a matter of law, to establish a breach of any duty owed by the School Board to the decedent; and
(2) The evidence did establish, as a matter of law, that the proximate cause of the accident was not the negligence of the School Board, but rather the efficient and intervening negligence of the driver and the decedent.
Diane Surette died as a result of the injuries she sustained when the automobile driven by Joan Galiardo struck her. At the time of the accident, Diane was standing approximately three feet in the roadway in front of a designated school bus stop at a vacant lot. Joan Galiardo claimed that she was unable to see Diane because she was blinded by the glare of the early morning sun. The plaintiffs' case was founded upon *153 the negligence of the School Board in designating the particular corner as a school bus stop because the weeds in the vacant lot were overgrown and the lot was in such a debris strewn condition that the students were effectively forced to stand near or on the roadway. The plaintiffs also alleged that a bus driver for the School Board had contributed to the accident by failing to report students standing near or on the roadway on previous occasions which the bus driver witnessed. The plaintiffs also read to the jury numerous statutes and State regulations dealing with the obligation of the School Board to insure a safe bus system. There was also testimony that some parents had complained to employees of the School Board about the hazardous bus stop.
Appellants first argue that there was no evidence that the school bus stop was maintained in an unsafe condition. We find substantial competent evidence to support the plaintiffs' claim of negligence in this regard. Helman v. Seaboard Coast Line R. Co., 349 So.2d 1187 (Fla. 1977); Herzog v. Herzog, 346 So.2d 56 (Fla. 1977).
Appellants next assert that the School Board did not owe a special duty to the decedent, and thus, was shielded from liability under the doctrine of Modlin v. City of Miami Beach, 201 So.2d 70 (Fla. 1967). Although Modlin is of doubtful validity in view of Cheney v. Dade County, 371 So.2d 1010 (Fla. 1979), this contention is nevertheless without merit. The decedent was not just a member of the general public; she was a member of a special class of persons, i.e., students to whom the School Board owed a duty to provide a safe transportation system. Under such circumstances, the Modlin doctrine is not applicable.
Appellants finally argue that the trial court should have found, as a matter of law, that the negligent acts of Joan Galiardo were an active and efficient intervening cause which broke the chain of causation initiated by the appellant Board. We summarily reject this contention under the facts of this case.
Accordingly, for all of the foregoing reasons, we affirm the judgment against the School Board of Broward County and Pacific Indemnity Insurance Company.

V.
The cross-appellants, Galiardo and Liberty Mutual, contend the trial court erred in denying their motion to dismiss the plaintiffs' complaint as it related to the survival cause of action. We are concerned only with the survival cause of action because the trial court properly denied recovery against these cross-appellants on the wrongful death aspects of the complaint.
As grounds for their motion to dismiss, the cross-appellants raised the statute of limitations. The pertinent sequence of events is as follows: Diane Surette was injured in an accident on September 15, 1971. On October 4, 1973, the administratrix of her estate filed a complaint for wrongful death and survival damages against the School Board, Pacific Indemnity, Joan Galiardo and Liberty Mutual. We have referred to this as Case No. 2. A separate complaint was filed by Diane's parents for their own pain and suffering and for the loss of support of their minor child. We have referred to this as Case No. 1 which remains pending in the trial court.
Case No. 2 was voluntarily dismissed as to the cross-appellants in June, 1974. Apparently attempting to revive that cause of action, the parents filed a new complaint in August, 1975 wherein they sought damages for their own pain and suffering and for loss of support of their minor child, a complaint identical to the one in the pending Case No. 1. Because it was identical to the pending case, the cross-appellants moved to dismiss the second complaint. That motion was subsequently granted; however, on September 22, 1975, the administratrix of Diane's estate filed an amended complaint without leave of court wherein the estate sought damages for the decedent's pain and suffering, loss of prospective earnings, and funeral expenses.
*154 When the survival cause of action arose in 1971, the applicable statute of limitations was four years. § 95.11(4), Fla. Stat. (1971). Thus, the statute of limitations became a bar to the survival action on September 16, 1975, four years after the accident. The "amended complaint" which was filed without leave of court on September 22, 1975 was therefore untimely unless the "relation back doctrine" as stated in Fla.R. Civ.P. 1.190(c) applies. Rule 1.190(c) provides:
(c) Relation Back of Amendments. When the claim or defense asserted in the amended pleading arose out of the conduct, transaction or occurrence set forth or attempted to be set forth in the original pleading, the amendment shall relate back to the date of the original pleading.
Although amendments should be permitted liberally, one cannot defeat the bar of the statute of limitations by filing a new cause of action labelled as an amended complaint. The rule of liberality does not authorize a new cause of action. Cox v. Seaboard Coast Line R. Co., 360 So.2d 8 (Fla. 2nd DCA 1978); Versen v. Versen, 347 So.2d 1047 (Fla. 4th DCA 1977).
It is obvious that the amended complaint in the present case not only alleged a different cause of action from that alleged in the original complaint, but it was also filed by a different party. The original complaint was filed by the parents of the deceased for their own damages; the amended complaint was filed by the estate for different damages. We hold that the bar of the statute of limitations was apparent on the face of the complaint and the trial court erred by denying the cross-appellants' motion to dismiss.
Accordingly, the final judgment is reversed as to the cross-appellants, Joan Galiardo and Liberty Mutual, and this cause is remanded with directions to enter judgment for the cross-appellants.
AFFIRMED IN PART and REVERSED IN PART.
ANSTEAD, J., and TENDRICH, MOIE, J.L., Associate Judge, concur.
NOTES
[1] The Supreme Court formally receded from its holding in School Board of Broward County v. Surette, 281 So.2d 481 (Fla. 1973) in School Board of Broward County v. Price, 362 So.2d 1337 (Fla. 1978); however, the Court reaffirmed the Surette holding and confined it to that case only.